UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ELIZABETH N.,[1]

        Plaintiff,

    v.                          24-CV-273-LJV
                                            DECISION & ORDER

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

On March 27, 2024, the plaintiff, Elizabeth N. ("Elizabeth"), brought this action

under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the

determination by the Commissioner of Social Security ("Commissioner") that she was

not disabled.[2] *Id.* On June 24, 2024, Elizabeth moved for judgment on the pleadings,

Docket Item 5; on October 23, 2024, the Commissioner responded and cross-moved for

judgment on the pleadings, Docket Item 11; and on November 22, 2024, Elizabeth

replied, Docket Item 12.

_____

[1] To protect the privacy interests of Social Security litigants while maintaining
public access to judicial records, this Court will identify any non-government party in
cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order,
Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov.
18, 2020).

[2] Elizabeth applied for Disability Insurance Benefits ("DIB"). One category of
persons eligible for DIB includes any adult with a disability who, based on her quarters
of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C.
§ 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37–38 (2d Cir. 1989).

For the reasons that follow, this Court denies Elizabeth's motion and grants the Commissioner's cross motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation modified) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation modified) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

interpretation, the Commissioner's conclusion must be upheld.")  But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."  *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

## I.    THE ALJ'S DECISION

On May 1, 2023, the ALJ found that Elizabeth had not been under a disability from January 1, 2021, through the date of the decision.  *See* Docket Item 3 at 21.  The ALJ's decision was based on the sequential evaluation process under 20 C.F.R. § 404.1520(a).  *See id.* at 15–16.

At step one, the ALJ found that Elizabeth had not engaged in substantial gainful activity since January 1, 2021, the alleged onset date.  *Id.* at 16.  At step two, the ALJ found that Elizabeth suffered from a number of medically determinable impairments: "right shoulder impingement syndrome, right hand non-displaced metacarpal fracture, right thumb arthritis, right hip dysfunction, lumbago, dorsalgia, obesity, pre-diabetes, hypothyroidism, status post thyroidectomy, hypertension, status post cholecystectomy, dermatitis, sinusitis, obstructive sleep apnea, insomnia, fatigue, depressive disorder, bipolar disorder, anxiety disorder, opiate dependence in sustained remission, status post alcohol and tobacco use, and alcohol use disorder."  *Id.*

The ALJ then applied the special technique, finding that Elizabeth's mental impairments caused no limitations in understanding, remembering, or applying

3

information; interacting with others; and concentrating, persisting, or maintaining pace and only mild limitations in adapting or managing herself. *Id.* at 20–21. And the ALJ found that Elizabeth had no mental or physical impairment or combination of impairments that would significantly limit her ability to perform basic work-related activities for twelve consecutive months—that is, that Elizabeth's medically determinable mental and physical impairments were non-severe. *Id.* at 17. The ALJ therefore concluded that Elizabeth had not been under a disability from the alleged onset date through the date of the decision. *Id.* at 21; *see also id.* at 16.

## II.  ALLEGATIONS

Generously reading her motion, this Court finds that Elizabeth raises two arguments. *See* Docket Item 5-1 at 5–9. First, Elizabeth argues that the ALJ's step-two determination—that Elizabeth's medically determinable impairments were non-severe—was not supported by substantial evidence. *Id.* Second, Elizabeth argues that the ALJ failed to properly evaluate the opinion of Mary Katherine Kolbert, M.D. *Id.* at 7–8. For the reasons that follow, this Court disagrees.

## III.  ANALYSIS

### A.  The Step-Two Determination

At step two of the disability determination, an ALJ must "consider[] whether [a] claimant has a severe impairment which significantly limits his [or her] physical or mental ability to do basic work activities." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation modified). In this regard, an ALJ "will generally conclude that [a claimant's] impairment[s are] not severe, unless the evidence otherwise indicates that

4

there is more than a minimal limitation in [the claimant's] ability to do basic work activities."  20 C.F.R. § 404.1520a(d)(1).

Here, the ALJ found at step two that Elizabeth's "physical and mental impairments, considered singly and in combination, d[id] not significantly limit [her] ability to perform basic work activities" and therefore were non-severe.  Docket Item 3 at 21.  Substantial evidence supported the ALJ's finding.

For example, in evaluating Elizabeth's physical functioning, the ALJ considered the opinions of John Schwab, D.O., Gary Ehlert, M.D., and James Lawrence, M.D.  *See id.* at 18–19.  Dr. Schwab examined Elizabeth, found no abnormalities, and concluded that Elizabeth's impairments would cause "no restrictions."  *Id.* at 456.  Similarly, Drs. Ehlert and Lawrence, both state agency medical consultants, opined that Elizabeth's "physical impairments d[id] not meet or equal a listing, [we]re minimally if at all impacting on function, and [we]re therefore non[-]severe."  *Id.* at 74, 87–88.

As to Elizabeth's mental functioning, the ALJ considered the opinions of Susan Santarpia, Ph.D., L. Haus, Psy.D., and Lisa Dekeon, Ph.D.  *See id.* at 19.  Dr. Santarpia opined that Elizabeth had no limitations in any areas and concluded that her impairments "d[id] not appear to be significant enough to interfere with [her] ability to function on a daily basis."  *Id.* at 451.  Drs. Haus and Dekeon, state agency psychological and psychiatric consultants, respectively, reviewed the record and found that Elizabeth's psychiatric condition was "minimally impairing" and "[n]on[-]severe."  *Id.* at 76, 89–90.

Certainly, the opinions of Drs. Schwab, Ehlert, Lawrence, Santarpia, Haus, and Dekeon were sufficient to support the ALJ's finding that Elizabeth's medically

5

determinable impairments—individually and in combination—were all non-severe. *See Grega v. Saul*, 816 F. App'x 580, 582–83 (2d Cir. 2020) ("A consultative examiner's opinion may constitute substantial evidence if otherwise supported by the record."); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[A]n ALJ is free . . . to choose between properly submitted medical opinions."). The ALJ's step-two determination, therefore, was supported by substantial evidence and was not error. *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

### B.  Dr. Kolbert's Opinion

For claims filed on or after March 27, 2017, such as Elizabeth's, an ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion[s] or prior administrative medical finding[s], including those from [a claimant's] medical sources." *Angela H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp. 3d 1, 7 (W.D.N.Y. 2022) (citation modified) (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). Instead, an ALJ evaluates the opinion evidence and "articulate[s] . . . how persuasive [he or] she finds the medical opinions in the case record." *Id.*

The regulations list five factors for an ALJ to consider when evaluating a medical opinion: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors that "tend to support or contradict" the opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). An ALJ is required to "explain how [he or she] considered the supportability and consistency

factors" because they are "the most important factors" and "may, but [is] not required to, explain how [he or she] considered the [remaining] factors." *Id.* § 404.1520c(b)(2).

With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] or prior administrative medical finding[], the more persuasive the medical opinion[] or prior administrative medical finding[] will be." *Id.* § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion[] or prior administrative medical finding[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] or prior administrative medical finding[] will be." *Id.* § 404.1520c(c)(2). In other words, supportability addresses how well a source explains and provides evidence for his or her opinion, and consistency addresses whether an opinion fits with the rest of the medical record. *See Spottswood v. Kijakazi*, 2024 WL 89635, at *1 (2d Cir. Jan. 9, 2024).

On March 23, 2023, Dr. Kolbert completed a primary source statement on Elizabeth's behalf. *See* Docket Item 3 at 619–24. Dr. Kolbert opined that Elizabeth could sit for more than two hours at a time and for at least six hours in an eight-hour workday, could stand for one hour at a time and for less than two hours in an eight-hour workday, and required a five-minute walking break every sixty minutes. *Id.* at 621–22. Dr. Kolbert also opined that Elizabeth could rarely lift twenty pounds or less, never lift fifty pounds or more, occasionally crouch or climb stairs, and never climb ladders. *Id.* at 622. Dr. Kolbert concluded that Elizabeth's symptoms would frequently interfere with her attention and concentration and that she would be absent from work more than four days per month. *Id.* at 620, 622.

7

The ALJ found Dr. Kolbert's opinion "unpersuasive," explaining that it was "inconsistent with the overall medical evidence, including clinical findings and objective radiology reports." *Id.* at 19. The ALJ also noted that the opinion was inconsistent with the other opinion evidence, "as well as the treatment note observations, the reported activities of daily living, and the conservative medical treatment history." *Id.* at 19–20.

Elizabeth argues that the ALJ's explanation "d[id] not constitute [the] full supportability and consistency analysis" that the regulations required. Docket Item 5-1 at 7. She is correct. While the ALJ addressed the consistency of Dr. Kolbert's opinion with the remainder of the record, the ALJ did not explain how well Dr. Kolbert supported her opinion with explanations and medical evidence.[4] *See* Docket Item 3 at 19–20; *see also Spottswood*, 2024 WL 89635, at *1. That was error. *See Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022).

---

[4] The Commissioner says that "the ALJ . . . cited to the clinical findings contained in Dr. Kolbert's primary source statement, thereby satisfying the requirement to explain how he considered the supportability factor under the relevant regulations." Docket Item 11-1 at 8 (citing Docket Item 3 at 19–20). In other words, the Commissioner suggests that citing an opinion and the clinical findings in it and saying that the opinion is unsupported is good enough. But if an ALJ can satisfy his or her duty to address whether an opinion is well supported simply by citing that opinion and concluding that it is not, then the requirement that the ALJ address supportability means nothing. The ALJ is required to "*explain* how [he or she] considered the supportability . . . factor[]," 20 C.F.R. § 404.1520c(b)(2) (emphasis added), not simply to conclude that it is unsupported, *see Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021) ("Nowhere in the ALJ's decision does she explain, as the new regulations require, what the respective [providers] used to support their opinions and reach their ultimate conclusions."); *cf. Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 31 (S.D.N.Y. 2022) ("The ALJ offered only that 'Dr. Chen's opinion is supported by record review' and that 'Dr. Healy's opinion is supported by examination.' Such conclusory statements offer no insight into how well either doctor supported and explained their opinion and are insufficient to withstand review." (citation modified)).

8

The Court's inquiry does not end there, however.  An ALJ's error is harmless if "a searching review of the record assures [the Court] that the substance of the [regulation] was not traversed."  *Id.* (citation modified) (citing *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)).  In other words, the Court may affirm the ALJ's decision if "the record provides 'good reasons' for assigning 'little weight' to" Dr. Kolbert's opinion.  *See Estrella*, 925 F.3d at 95 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2014)).  And the record here does just that.

First, and as the ALJ found, *see* Docket Item 3 at 19–20, Dr. Kolbert's opinion was indeed inconsistent with the other opinion evidence in the record.  As noted above, Dr. Schwab opined that Elizabeth's physical impairments would cause "no restrictions." *Id.* at 456.  Drs. Ehlert and Lawrence likewise found that Elizabeth's "physical impairments d[id] not meet or equal a listing, [we]re minimally if at all impacting on function, and [were] therefore non[-]severe."  *Id.* at 74, 87–88.  Certainly, those findings were a far cry from the disabling limitations that Dr. Kolbert found.  *Compare id.* at 74, 87–88, 456, *with id.* at 619–24.

Similarly, Dr. Santarpia found no limitations in any areas of mental functioning and concluded that Elizabeth's mental impairments "d[id] not appear to be significant enough to interfere with [her] ability to function on a daily basis."  *Id.* at 451.  And Drs. Haus and Dekeon opined that Elizabeth's psychiatric condition was "minimally impairing" and "[n]on[-]severe."  *Id.* at 76, 89–90.  Those findings differed dramatically from the limitations about which Dr. Kolbert opined.  *Compare id.* at 76, 89–90, 451, *with id.* at 619–24.

Moreover, after reviewing Dr. Kolbert's opinion in light of her supporting explanations, this Court concludes that the ALJ was correct when he found—albeit without explanation—that Dr. Kolbert's opinion was not well supported.  For example, Dr. Kolbert found that Elizabeth had several mental health symptoms: decreased energy; blunt, flat, or inappropriate affect; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; persistent disturbances of mood or affect; and bipolar syndrome.  *Id.* at 623.  But Dr. Kolbert then said that she was "not familiar with the categories" of mental functioning and therefore "c[ould not] comment" on them.  *Id.* at 624.  Dr. Kolbert also checked boxes consistent with significant physical limitations, but she offered little by way of objective findings to support those limitations.  *See id.* at 619–24.  So while the ALJ could have—and should have—discussed the supportability factor in some detail, any error in failing to do so was harmless.  *See Brault*, 683 F.3d at 448 ("[A]n ALJ is not required to discuss every piece of evidence submitted.  An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." (citation modified)); *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").

In sum, a searching review of the record convinces this Court that the ALJ had "good reasons" for discounting Dr. Kolbert's opinion—namely, that it was inconsistent with and unsupported by the medical evidence.  *See Estrella*, 925 F.3d at 95; *see also Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  And while the ALJ failed to

10

explicitly discuss the supportability factor in the detail required, his failure to do so was harmless error. *See Loucks*, 2022 WL 218293, at *2; *see also Mongeur*, 722 F.2d at 1040.

## CONCLUSION

The ALJ's decision was not contrary to the substantial evidence in the record, and any error in the ALJ's analysis was harmless. Therefore, and for the reasons stated above, Elizabeth's motion for judgment on the pleadings, Docket Item 5, is DENIED, and the Commissioner's cross motion for judgment on the pleadings, Docket Item 11, is GRANTED. The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:   August 11, 2026
         Buffalo, New York

*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

11